IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEIZER CAMPUS OPERATIONS, LLC,
an Oregon limited liability
company,

       Plaintiff,

   v.

LEXINGTON INSURANCE COMPANY,
a Delaware corporation,

       Defendant.

Case No. 6:13-cv-00165-AA
OPINION AND ORDER

---

David D. VanSpeybroeck
Clifford S. Davidson
Sussman Shank, LLP
1000 S.W. Broadway, Suite 1400
Portland, Oregon 97205
    Attorneys for plaintiff

Donald J. Verfurth
Stephanie M. Ries
Troy A. Biddle
Gordon & Rees, LLP
701 Fifth Avenue, Suite 2100
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Keizer Campus Operations, LLC moves for partial summary judgment, pursuant to Fed. R. Civ. P. 56, on its claims against defendant Lexington Insurance Company. Defendant filed a cross-motion for summary judgment. For the reasons set forth below, plaintiff's motion is granted and defendant's motion is denied.

## BACKGROUND

Plaintiff operates a senior health care facility in Keizer, Oregon. From 2008 through 2011, plaintiff was continuously insured by defendant under three separate, annually-renewable "Healthcare Professional Liability" policies, effective retroactively to March 1, 2005. The parties' most recent insurance contract, which provided coverage from November 1, 2010 through November 1, 2011, required defendant to defend and indemnify plaintiff against certain claims arising out of "medical incidents" and "occurrences." See generally First Lopardo Decl. Ex. A ("Lexington Policy"). Subsequently, plaintiff elected not to renew its insurance with defendant and instead obtained a policy, which became effective on November 1, 2011, from Beazley PLC and Lloyd's of London (collectively "Beazley"). See generally id. at Ex. C ("Sapphire Policy").

In August 2010, plaintiff received notice from Trenna Landers, as personal representative for the estate of Marian Robertson, regarding a potential claim for damages. On November 4, 2011, Landers initiated a lawsuit against plaintiff alleging that, in the

Page 2 - OPINION AND ORDER

course of treating Robertson in June 2010 for congestive heart failure, plaintiff violated Robertson's "Do Not Resuscitate" ("DNR") order by providing emergency medical services. On December 1, 2011, plaintiff was served with Landers' complaint; plaintiff tendered a formal claim to defendant on that same day. On December 14, 2011, defendant informed plaintiff that its duty to defend was not triggered due to the Sapphire Policy, which had a retroactive date of July 6, 2003. For several months thereafter, the parties corresponded regarding plaintiff's claim. During that time, plaintiff also tendered a claim for coverage under the Sapphire Policy. On February 1, 2012, Beazley rejected plaintiff's tender "because the dates of the alleged negligence and the date the Claim was first made, August 24, 2010, predate the Policy inception date of November 1, 2011." Second Lopardo Decl. Ex. C, at 2. On October 4, 2012, defendant formally denied plaintiff's claim because the Lexington Policy "expired on November 1, 2011 [and] coverage with Sapphire Blue commenced on that date." First Lopardo Decl. Ex. D, at 1.

On January 29, 2013, plaintiff filed a complaint in this Court, alleging claims for breach of contract and declaratory relief. On June 18, 2013, plaintiff filed a partial motion for summary judgment concerning defendant's refusal to defend plaintiff against the Landers lawsuit. On June 22, 2013, defendant filed a cross-motion for summary judgment on all of plaintiff's claims.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions,

Page 3 - OPINION AND ORDER

affidavits, answers to interrogatories, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Substantive law on an issue determines the materiality of a fact.  T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact are resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### DISCUSSION

This dispute centers on whether defendant has a duty to defend and indemnify plaintiff against Landers' lawsuit under the Lexington Policy.

I.    Legal Standard for Insurance Policy Interpretation

The interpretation of an insurance policy is a question of law, to be determined by the court. Hoffman Constr. Co. v. Fred S. James & Co. of Or., 313 Or. 464, 469-71, 836 P.2d 703 (1992). In construing the meaning of an insurance policy, "[t]he primary and governing rule is to ascertain the intention of the parties." Id. at 469 (citation and internal quotations omitted). In so doing, the court examines the terms and conditions of the policy; undefined terms are given their ordinary and plain meaning. Groshong v. Mut. of Enumclaw Ins. Co., 329 Or. 303, 307-8, 985 P.2d 1284 (1999). Oregon courts refer to the dictionary when determining the ordinary and plain meaning of an undefined term in an insurance policy, except where that term has already been construed by a previous court; there, the court construes the disputed term consistent with relevant precedent. See Gonzales v. Farmers Ins. Co. of Or., 210 Or. App. 54, 60-5, 150 P.3d 20 (2006), aff'd, 345 Or. 382, 196 P.3d 1 (2008).

Where the disputed term has no plain meaning, "that is, if the term is ambiguous" because it is capable of more than one reasonable interpretation, the court "examine[s] that term within the context of the policy as a whole." Dewsnup v. Farmers Ins. Co. of Or., 349 Or. 33, 40, 239 P.3d 493 (2010) (citation omitted). If, after examining the text and context of the policy, the disputed term remains ambiguous, the court then "construe[s] the term against the drafter and in favor of the insured." Id.

Page 5 - OPINION AND ORDER

(citation omitted).   Conversely, where the disputed term is unambiguous, it is enforced as written.  <u>Groshong</u>, 329 Or. at 308.

An insurer's "duty to defend arises whenever the allegations of a complaint filed against the insured show that there is a possibility that the policy provides coverage for the claim made." <u>Delta Sand & Gravel Co. v. General Ins. Co.</u>, 111 Or.App. 347, 350, 826 P.2d 82, <u>rev. denied</u>, 314 Or. 175, 836 P.2d 1344 (1992) (citation omitted).  When evaluating an insurer's duty to defend, the court is limited to reviewing the "eight-corners" of the complaint and the insurance policy.  <u>Ledford v. Gutoski</u>, 319 Or. 397, 399-400, 877 P.2d 80 (1994).  Under the eight-corners rule, where the facts alleged in the complaint against the insured could, if proven, fall within the coverage provided by the insurance policy, the insurer is under a duty to defend, regardless of whether information extrinsic to the complaint could establish that the claim at issue is not covered.  <u>Id.</u> at 400 (citation omitted). An exception exists, however, where a claims-made policy is involved: "the eight-corner rule [does not] bar consideration of extrinsic evidence of the date a claim was noticed to an insured when analyzing an insurer's duty to defend under a claims-made policy."  <u>Harris Thermal Transfer Prods. v. James River Ins. Co.</u>, 2010 WL 2942611, *6 (D.Or. July 19, 2010), <u>aff'd</u>, 457 Fed.Appx. 660 (9th Cir. 2011) (citation omitted).

## II.  Lexington Policy Terms

The Lexington Policy provides coverage for "an occurrence, offense or medical incident in the United States of America . . . provided a claim is made and suit is brought in the United States of America." Lexington Policy at 13; see also id. at 17 (providing coverage for "defense costs" and "amounts that [the insured is] legally required to pay others as damages" that result "from a medical incident arising out of professional services provided by any Insured . . . on or after the retroactive date and before the end of the policy period"). "Medical incident" is defined as "any act, error or omission in the providing or failure to provide professional services." Id. at 9. "Professional services" are defined, in turn, as "[m]edical, surgical, dental, nursing or other health care services"; an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 9, 11. Lastly, "suit" is defined as "a civil proceeding in a court to which damages under this insurance applies" and "defense costs" include "fees charged by an attorney designated by [the insurer]," as well as expenses in conjunction with any "investigation, adjustment, defense and appeals." Id. at 7, 11.

In addition to providing coverage during the policy period, the Lexington Policy contains an automatic extended reporting period ("AERP"):

Page 7 - OPINION AND ORDER

> [i]f this Coverage Part is canceled or not renewed for
> any reason other than non-payment of premium, and if the
> Optional Extended Reporting Period Endorsement is not
> purchased, then we will provide an automatic extended
> reporting period of sixty (60) days, starting with the
> end of the policy period, during which claims arising out
> of medical incidents which take place on or after the
> retroactive date but before the end of the policy period
> may be first made . . . The automatic extended reporting
> period does not extend the policy period or change the
> scope of coverage provided. We will consider any claim
> first made during the automatic extended reporting period
> to have been made on the last day of the policy period .
> . . The automatic extended reporting period, however,
> will not apply to claims if other insurance purchased by
> Insureds covers them or would cover them if its limits of
> insurance had not been exhausted.

Id. at 23, 35.

The Lexington Policy, however, excludes coverage for "any
bodily injury . . . sustained by [the insured's] patients or
residents." Id. at 25, 31 ("Bodily Injury Exception"). "Bodily
injury" is defined as "physical injury, sickness or disease
sustained by any person, including death resulting from any of
these at any time [but not] emotional distress or mental anguish
unless due to physical injury, sickness or disease." Id. at 7.
Additionally, "patient" means "a person seeking or receiving,
either on an inpatient, outpatient or emergency basis, any form of
medical, surgical, dental or nursing care or any service or
treatment." Id. at 9. The term "resident" is not defined. See
generally id.

Likewise, the Lexington Policy "does not defend or pay claims
for [a]ny liability arising out of acts, errors or omissions of
which an Insured had knowledge prior to the inception date of the
policy period, if, as of such date, an Insured could reasonably

Page 8 - OPINION AND ORDER

foresee a claim might result." <u>Id.</u> at 17-18 ("Prior Acts Exception").

III. <u>Analysis</u>

Plaintiff asserts that the plain language of the Lexington Policy obligates defendant to defend and indemnify it against Landers' lawsuit. Conversely, defendant contends that it is entitled to summary judgment for three reasons. First, defendant argues that both the Prior Acts and Bodily Injury Exceptions preclude coverage. Second, defendant argues that the AERP is inapplicable because plaintiff voluntarily elected not to renew coverage. Alternatively, defendant asserts that, because plaintiff held a similar policy with Beazley, its duty to defend was not triggered even if notice was provided during the AERP.[1]

A.   <u>The Prior Acts Exception</u>

Defendant contends, for the first time in its response to plaintiff's motion, that the Prior Acts Exception "applies in this

---

[1] In its reply brief, defendant also moves to strike plaintiff's response as untimely. <u>See</u> Def.'s Reply to Cross-Mot. Summ. J. 2-4. Defendant's request is denied because "[m]otions may not be combined with any response, reply, or other pleading." LR 7-1(b). Even assuming, however, that defendant's request was properly raised, it is undisputed that plaintiff filed its response less than a week late. It is further undisputed that defendant replied to plaintiff's response, such that neither it nor these proceedings were prejudiced by any alleged untimeliness or otherwise negatively affected. Further, the Court did not rely exclusively on plaintiff's response in deciding defendant's motion; rather, the parties' contract, plaintiff's complaint, and Landers' complaint were dispositive. For these additional reasons, defendant's motion to strike is denied.

case to preclude coverage for the Underlying Lawsuit based on Keizer's knowledge of Ms. Landers' potential claim prior to inception of the 2010-2011 Lexington Policy." Def.'s Resp. to Mot. Partial Summ. J. 8. As plaintiff notes, defendant did not raise this defense in its letter denying coverage, answer, cross-motion for summary judgment,[2] or during the conferral process. See Pl.'s Reply to Mot. Partial Summ. J. 2, 4-8. Defendant's failure to provide previous notice of this defense, especially during the conferral process and in light of plaintiff's significant expenditure of time and resources litigating against the underlying lawsuit for approximately the past two years, is reason alone to reject defendant's contention. See, e.g., Frank v. Cascade Healthcare Cmty., Inc., 2013 WL 867387, *12 (D.Or. Mar. 6, 2013); see also ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co., 349 Or. 117, 127, 241 P.3d 710 (2010) ("the insured [bears] the burden to prove coverage [whereas the insurer] has the burden to prove an exclusion from coverage") (citations omitted).

---

[2] The Court acknowledges that defendant's cross-motion contains a footnote stating that the Prior Acts Exclusion "would preclude coverage for the Landers claim if Keizer had knowledge prior to the inception date of the 2010-2011 Lexington Policy." Def.'s Mem. in Supp. of Cross-Mot. Summ. J. 20 n.1. A court, however, need not consider or address "substantive arguments raised only in a footnote." Rambus Inc. v. Hynix Semiconductor Inc., 569 F.Supp.2d 946, 985 (N.D.Cal 2008); see also Morales v. Woodford, 388 F.3d 1159, 1168 n.14 (9th Cir. 2004), cert. denied, 546 U.S. 935 (2005) (citation omitted). In addition, defendant's assertion that it did not raise this defense earlier because "it had no evidence that the exclusion might apply" is belied by the evidence of record. Def.'s Resp. to Mot. Partial Summ. J. 8; see also First Lopardo Decl. Ex. D., at 3 (correspondence demonstrating that defendant knew, prior to the initiation of this action, that the underlying lawsuit was based on events that took place in 2010); Bliss Decl. Ex. 1 (same).

Page 10 - OPINION AND ORDER

Even assuming, however, that this defense was properly raised, defendant's argument in favor of summary judgment nonetheless fails. Defendant's reliance on the Prior Acts Exception in the Lexington Policy ignores the fact that "Keizer was insured continuously under Lexington insurance from November 1, 2008 until November 1, 2011" and, further, that the policy "cover[ing] Keizer from November 1, 2009 through November 1, 2010 was identical in all relevant language to the one that incepted in November 2010."[3] Pl.'s Reply to Mot. Partial Summ. J. 2; see also Third Lopardo Decl. ¶ 3 & Ex. G. The parties have not cited to, and the Court is not aware of, any authority addressing the applicability of a prior acts or analogous exclusion where the insured was covered under consecutive and substantively identical policies with the same insurer throughout the relevant time period. Nevertheless, the events upon which the Landers complaint are based, which transpired in June 2010, would clearly not be excluded as "prior acts" under the plain language of the 2009-2010 policy. See Third Lopardo Decl. Ex. G, at 18. In other words, it is undisputed that plaintiff first gained knowledge of the "acts, errors or omissions"

---

[3] Plaintiff did not include any allegations regarding the parties' previous policies in its complaint due to defendant's failure to raise this exclusion until after moving for summary judgment; however, plaintiff argues that "[d]enying summary judgment [on this basis and requiring plaintiff to move to amend its complaint] unnecessarily would waste the resources of the parties and the Court." Pl.'s Reply to Mot. Partial Summ. J. 5-7. The Court agrees and, in order to provide the most complete review of the parties' motions, considers plaintiff's uncontroverted argument and evidence regarding the existence of continuous, identical coverage during the relevant time period.

upon which the Landers lawsuit is premised during the 2009-2010 policy period.  Id.

Accordingly, because the circumstances supporting the Landers complaint arose during an effective policy period and because plaintiff had overlapping coverage, the resolution of this issue hinges on whether the timing of plaintiff's notice was prejudicial.  See Emp'rs Ins. of Wausau, A Mut. Co. v. Tektronix, Inc., 211 Or.App. 485, 494, 156 P.3d 105, rev. denied, 343 Or. 363, 169 P.3d 1268 (2007) ("[w]hen an insured fails to give immediate notice to its insurer of a possible claim, the viability of the insurer's policy obligation turns on a two-part inquiry: (1) whether the insurer was prejudiced by the delayed notice; and (2) if the insurer was prejudiced, whether the insured acted reasonably in failing to give notice at an earlier time") (citations omitted).  "The insurer has the burden of demonstrating prejudice."  Id. (citation omitted).

Here, defendant did not brief this issue and therefore failed to carry its burden.  See generally Def.'s Resp. to Mot. Partial Summ. J.; Def.'s Reply to Cross-Mot. Summ. J.  Regardless, because defendant received notice of Landers' lawsuit precisely when the alleged duty to defend began – i.e. when the Landers complaint was filed and served – it cannot establish the requisite prejudice.  See, e.g., Tektronix, Inc., 211 Or.App. at 495-504; see also ZRZ Realty, 349 Or. at 127.  As such, the Prior Acts Exception does not bar plaintiff's claim.

Page 12 - OPINION AND ORDER

B.    The Bodily Injury Exception

Defendant next argues that, because Robertson was a patient or resident at plaintiff's retirement facility and Landers alleges claims for battery, professional negligence, and intentional infliction of emotion distress, the Bodily Injury Exception governs.    It is undisputed that Robertson was a "patient or resident" within the meaning of the Lexington Policy.    See Lexington Policy at 9, 25, 31; see also First Lopardo Decl. Ex. B, at ¶ 1.    Whether Landers' claims fall within the definition of "bodily injury" is a different matter.

In determining whether an exclusion in insurance contract applies, Oregon courts examine the factual allegations showing the origin of damages rather than the legal theories asserted by the plaintiff in his or her complaint.    See Journal Pub. Co. v. Gen. Cas. Co., 210 F.2d 202, 207-10 (9th Cir. 1954).    Here, the damages that Landers seeks arise out of the emotional distress she suffered as a result of "having to make the decision to end the life of her grandmother" and thus are unrelated to Robertson's alleged "bodily injury."    First Lopardo Decl. Ex. B, at ¶¶ 20-26; Lexington Policy at 7; see also Compl. ¶¶ 5-18.    Assuming that plaintiff provided timely notice of its claim, because both plaintiff's and Landers' complaints contain allegations for which the Lexington Policy manifestly provides coverage, "the insurer has a duty to defend even if the complaint also contains allegations of excluded conduct."    State Farm Fire & Cas. Co. v. Am. Family Mut. Ins. Co.,

Page 13 - OPINION AND ORDER

242 Or.App. 60, 63-64, 253 P.3d 65 (2011) (citation omitted); <u>see</u> <u>also</u> Lexington Policy at 7 (providing coverage for emotional distress damages that are "[not] due to physical injury, sickness or disease").

Further, Landers' battery and medical negligence claims are premised on allegations that plaintiff "engage[d] [in] CPR techniques for 20 minutes" and "unwanted life-sustaining treatment, for which there was no consent or justification by reason of the DNR." First Lopardo Decl. Ex. B, at ¶¶ 6-12; <u>see also</u> Compl. ¶ 11. As such, the alleged battery of Robertson occurred because defendant provided "unwanted life sustaining treatment" that temporarily relieved her ultimately life-ending cardiovascular condition. First Lopardo Decl. Ex. B, at ¶¶ 10-12; <u>see also id.</u> at ¶ 18 ("Robertson received emergency medical intervention and treatment, including, inter alia, life supports she had theretofore declined").

As a preliminary matter, neither party addresses whether Landers' allegations fall within the Lexington Policy's definition of "bodily injury."[4] As such, the parties have not cited to, and

---

[4] In fact, plaintiff wholly failed to address defendant's argument regarding the Bodily Injury Exception. <u>See generally</u> Pl.'s Resp. to Cross-Mot. Summ. J. Further, the entirety of defendant's argument regarding this issue states: "Landers' claims for battery professional negligence, and intentional infliction of emotional distress would not exist but for Marian Robertson's claim for 'bodily injury.'" Def.'s Mem. in Supp. of Cross-Mot. Summ. J. 22 (citing three out-of-circuit cases that are factually distinguishable). As such, defendant failed to carry its burden in establishing that this exclusion applies. <u>See</u> <u>ZRZ Realty</u>, 349 Or. at 127.

the Court is not aware of, any authority discussing whether a
bodily injury exception applies to unwanted but nonetheless live-
saving or life-extending medical treatment. Regardless, the Court
finds that the phrase "physical injury, sickness or disease"
describes corporeal damage or hurt. See Webster's II New Riverside
Univ. Dictionary 629 (1988) (defining "injury" as "[d]amage of or
to a person"; defining "injure" as "[t]o cause physical harm to:
HURT[,] [t]o cause damage to: IMPAIR[,] [or] [t]o cause distress
to: WOUND"). In other words, the phrase "bodily injury" connotes
physical harm, in the form of an injury, sickness, or disease. See
Lexington Policy at 7.

Landers, however, does not contend that plaintiff's allegedly
wrongful physical contact resulted in injury, sickness, or disease.
To the contrary, plaintiff's allegedly wrongful physical contact
transitorily alleviated and/or healed an injury, sickness, or
disease, thereby prolonging Robertson's life. See generally First
Lopardo Decl. Ex. B; see also Compl. ¶¶ 5-18. Thus, while battery,
as a legal theory, ordinarily encompasses "bodily injury," that is
not true in the case at bar; instead, Landers' factual allegations
make clear that plaintiff's actions did not actually damage, hurt,
or otherwise injure Robertson's body. Nevertheless, even assuming
that the phrase "physical injury, sickness or disease" could
reasonably be interpreted to encompass any unwanted physical
contact, the Bodily Injury Exception is still inapplicable; where
an exclusion is capable of more than one reasonable interpretation,
the court must read the insurance policy in favor of coverage.

Page 15 - OPINION AND ORDER

Dewsnup, 349 Or. at 40.   Therefore, the Bodily Injury Exception does not prohibit coverage under the Lexington Policy.

    C.   The Automatic Extended Reporting Period Provision

Lastly, defendant argues that the AERP is inapplicable where, as here, the insured terminates coverage or possesses a similar policy with another carrier.

In order for coverage to exist under the parties' agreement, a "claim for a 'medical incident' must be first made against an Insured during the 'policy period' or any extended reporting period, if applicable." Lexington Policy at 17.   The AERP clause provides for a sixty day extended reporting period if coverage "is canceled or not renewed for any reason other than non-payment of premium,[5] and if the Optional Extended Reporting Period Endorsement is not purchased," provided that the medical incident at issue "take[s] place on or after the retroactive date but before the end of the policy period" and no "other insurance purchased by Insureds covers them or would cover them if its limits of insurance had not been exhausted." Id. at 23, 35.

It is undisputed that plaintiff did not first report Robertson's "medical incident"[6] until after the termination of the

    [5] The record indicates that "Keizer paid all premiums due under the Lexington Policy" and, accordingly, "nonrenewal of the Lexington Policy was [merely] a voluntary business decision." First Lopardo Decl. ¶ 3.

    [6] Defendant does not dispute that the events upon which Landers' complaint is based qualify as a medical incident. See

Page 16 - OPINION AND ORDER

Lexington Policy period, despite the fact that, as discussed above, the incident occurred after the retroactive date but before the end of the 2009-2010 policy period.  *See* Compl. ¶¶ 13-18.  It is also undisputed that plaintiff discontinued the Lexington Policy and, further, did not purchase additional coverage under the Optional Extended Reporting Period Endorsement ("OERP").  In addition, it is undisputed that, at the time plaintiff provided tender to defendant, it was insured pursuant to the Sapphire Policy, under which coverage for the Landers lawsuit was formally denied as a "circumstance or event known by the Insured prior to the inception date of this Policy Period."  Sapphire Policy at 42, 46; see also Second Lopardo Decl. Ex. C, at 1-2.

   i.   Whether the Automatic Extended Reporting Period
        Applies When the Insured Terminates Coverage

Defendant interprets the AERP provision as applying only where the insurer terminates the insurance contract: "[u]nder the Lexington Policy, an insured like Keizer is entitled to coverage under the AERP provision only when Lexington decides to cancel or not renew the insured's policy, not when the insured elects to not renew the policy."  Def.'s Resp. to Mot. Partial Summ. J. 13;

generally Def.'s Mem. in Support of Cross-Mot. Summ. J.; Def.'s
Reply to Cross-Mot. Summ. J.; Def.'s Resp. to Mot. Partial Summ.
J.  To the extent that defendant's reliance on the Bodily Injury
Exception can be construed as such, the Court finds that Landers'
allegations fall squarely within the definition of a "medical
incident."  Specifically, her complaint inheres to plaintiff's
alleged failure to abide by Robertson's DNR while providing
medical services.  Lexington Policy at 9, 11 (defining "medical
incident"); see also First Lopardo Decl. Ex. B; Compl. ¶ 11.

Page 17 - OPINION AND ORDER

Def.'s Mem. in Supp. of Mot. Summ. J. 8.  Defendant argues further that "[t]his interpretation is supported by the OERP provision which is available when an insured such as Keizer chooses not to cancel or not renew the Lexington Policy." Def.'s Mem. in Supp. of Mot. Summ. J. 8. Defendant's construction, however, is flawed for three reasons.

First, contrary to defendant's surreptitious interpretation, the AERP provision does not actually state it is triggered only where the insurer, as opposed to the insured, cancels coverage. The AERP clause is silent as to this matter and instead states broadly, without identifying the subject or actor, that "[i]f this Coverage Part is canceled or not renewed for any reason other than non-payment of premium, and if the Optional Extended Reporting Period Endorsement is not purchased, then we will provide an automatic extended reporting period of sixty (60) days." Lexington Policy at 23, 35.  Accordingly, in its attempt to avoid its contractual duty to defend, defendant erroneously inserted itself as the subject of the AERP provision where the Lexington Policy does not, in fact, include such language.  Once this disparity is resolved, it becomes clear that this provision applies where either party terminates coverage and the other conditions precedent are met.

Second, when defendant intended an extended coverage period to be activated by a certain party, it did so explicitly.  For instance, the OERP provision specifies that either the insured or

Page 18 - OPINION AND ORDER

insurer may terminate the policy and still be eligible. <u>Id.</u> at 23, 35, 72. This indicates that defendant knows how to identify a subject and confine an extended reporting period to instances where the insurer cancels the parties' agreement, and yet defendant neglected to do so here. Moreover, the OERP would not be redundant if defendant truly intended the AERP to apply solely where the insurer elects not to continue coverage. This is because the OERP clause provides a broader range of rights than those afforded by the AERP provision. Specifically, the OERP extends the reporting period past the sixty days afforded by the AERP; it also provides for an extended reporting period despite the insured's possession of other, applicable insurance, whereas the AERP does not. <u>Id.</u> at 23-24, 35-36.

Third, at the very least, defendant's imprecise drafting allows the AERP provision to have more than one reasonable interpretation. Thus, even accepting defendant's interpretation as plausible, this Court would be required to construe the Lexington Policy in favor of coverage. <u>Dewsnup</u>, 349 Or. at 40.

      ii.  <u>Whether the Sapphire Policy Precluded Coverage Under the Automatic Extended Reporting Period</u>

Defendant also argues that "Keizer is not entitled to coverage under the AERP provisions because Keizer purchased replacement insurance from another insurer after the expiration of the Lexington Policy, thereby extinguishing coverage under the Lexington Policy." Def.'s Mem. in Supp. of Cross-Mot. Summ. J. 17;

Page 19 - OPINION AND ORDER

see also Def.'s Resp. to Mot. Partial Summ. J. 11 (AERP is not triggered because "other insurance purchased by Keizer covers them or should cover them for the Underlying Lawsuit") (internal quotations and brackets omitted).

Once again, defendant attempts to read language into the Lexington Policy that is not there. Contrary to defendant's assertion, the AERP clause does not actually state that it is inapplicable where the insured possesses other insurance that covers or should cover the alleged loss. In fact, the phrase "should cover" is at no point used within the AERP provision. See Lexington Policy at 23, 35. That subsection unambiguously articulates that the AERP "will not apply to claims if other insurance purchased by Insureds covers them or would cover them if its limits of insurance had not been exhausted."[7] Id. (emphasis added). There is no argument or evidence in the record indicating that the Sapphire Policy's limits of insurance were exhausted. Rather, coverage was affirmatively denied under the Sapphire Policy "because the dates of the alleged negligence and the date the Claim was first made, August 24, 2010, predate the Policy inception date of November 1, 2011." Second Lopardo Decl. Ex. C, at 2; see also Sapphire Policy at 42, 46 (excluding coverage "for Legal Expenses

---

[7] The plain language at issue here is patently discrete from the determinative policy language in the cases that defendant relies on in support of its contention that the AERP is inapplicable. See Def.'s Resp. to Mot. Partial Summ. J. 10-11 (citing cases wherein the policies at issue barred coverage if the plaintiff possessed a "same or similar policy"); Def.'s Mem. in Supp. of Mot. Summ. J. 16-17 (same). As such, these cases are factually distinguishable and therefore not binding.

. . . arising out of any circumstance or event known by the Insured prior to the inception date of this Policy Period which the Insured reasonably could have believed would result in an Action," regardless of whether such circumstance or event transpired on or after the retroactive date). Thus, the record reveals that plaintiff did not have other insurance that "covers them or would cover them if its limits of insurance had not been exhausted." Lexington Policy at 23, 25; <u>see also</u> First Lopardo Decl. Ex. F, at 2; Sapphire Policy at 42, 46; Compl. ¶¶ 13-16. As a result, the AERP extended the reporting period for sixty days, until January 1, 2012, for claims arising out of "medical incidents" or "occurrences" that materialized on or after March 1, 2005 but before November 1, 2011.

In sum, neither the Prior Acts Exception nor the Bodily Injury Exception preclude coverage under the Lexington Policy and, further, the AERP provision applies in the case at bar. Moreover, the circumstances upon which the Landers lawsuit is premised transpired in June 2010, after the retroactive date but prior to last day of the relevant policy period. Finally, it is undisputed that plaintiff provided notice of the Landers lawsuit no later than December 1, 2011, during the AERP. Accordingly, defendant is required to defend and indemnify plaintiff against the Landers lawsuit. Therefore, plaintiff's motion is granted and defendant's motion is denied.

Page 21 - OPINION AND ORDER

**CONCLUSION**

Plaintiff's motion for partial summary judgment (doc. 14) is GRANTED.  Defendant's cross-motion for summary judgment (doc. 18) is DENIED.  The parties' requests for oral argument are DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 5th of September 2013.

Ann Aiken
United States District Judge

Page 22 - OPINION AND ORDER